# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 6851 | DATE | 6/1/2001 |
| CASE TITLE | William Doyle, Jr., et al. vs. Blue Cross Blue Shield of Illinois | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the r of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to strike [28 denied. Plaintiff's motion to remand [11] is granted. Plaintiff's motion for reassignment consolidation based on relatedness [16] is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 0 5 2001 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | |
| RJ | courtroom deputy's initials | 01 JUN -5 AM 7: 37 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| William Doyle, Jr., et al. ) | |
| ) | |
| Plaintiffs, ) | Case No. 00 C 6851 |
| v. ) | |
| ) | |
| Blue Cross Blue Shield of Illinois, ) | Judge Joan B. Gottschall |
| ) | |
| Defendant. ) | |

DOCKETED
JUN 0 5 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs sued defendant in the Circuit Court of Cook County Illinois, County Department - Chancery Division. Defendant removed the action to this court. Plaintiffs have moved this court to remand the case to the Illinois state court. Plaintiffs have also moved to strike a surreply filed by the defendants in connection with the motion to remand. For the reasons set forth below, plaintiffs' motion to strike is denied, but plaintiffs' motion to remand is granted.

### Background

Plaintiffs originally filed this class action lawsuit in the Circuit Court of Cook County Illinois on September 28, 2000. The plaintiffs subsequently filed an amended complaint with that court. Both the original and the amended complaints asserted only state law claims. The amended complaint sought recovery under the Illinois "common fund" doctrine and under the Illinois Consumer Fraud and Deceptive Practices Act. On November 1, 2000, the defendant filed a Notice of Removal with this court, claiming that this court has subject matter jurisdiction over plaintiffs' claims under the "federal question" jurisdictional statute, 28 U.S.C. § 1331. Plaintiffs then filed a motion to remand, arguing that removal was inappropriate because this court lacks subject matter jurisdiction over plaintiffs' claims.

The dispute before the court concerns the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901 *et seq.*, a federal statute that governs certain aspects of health benefit plans provided to federal employees and their dependents. One of the named plaintiffs in this case, Jose S. Cruz, was enrolled in, and a member of, the Service Benefit Plan ("Plan"), which is one of the federal government's employee health benefits plans.[1] The Plan was created by a federal government contract between the U.S. Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("Carrier") on behalf of several Blue Cross and Blue Shield plans pursuant to FEHBA. The Plan is underwritten by the participating Blue Cross and Blue Shield plans which administer it on behalf of the Carrier and are referred to as Local Plans. Defendant Blue Cross Blue Shield of Illinois, a Division of Health Care Service Corporation ("HCSC"), is the local plan that underwrites the Plan with respect to Cruz.

The plaintiffs were injured in an accident and received treatment through health benefit plans administered by Blue Cross Blue Shield of Illinois. The named plaintiffs, together with other purported class members, retained counsel to prosecute claims against third-party tortfeasors arising out of the incident that caused plaintiffs' injuries. Plaintiffs and the other purported class members obtained a recovery, and incurred attorney's fees and other related costs in connection with that recovery. Defendant did not assist plaintiffs or their counsel in obtaining the third-party recovery.

Defendant asserted a lien against any recoveries plaintiffs might obtain, pursuant to its reimbursement rights under the Plan. Defendant, however, refused to provide plaintiffs a full set-off for attorney's fees and costs incurred in obtaining the third-party recovery. Plaintiffs contend that

---

[1] The other two named plaintiffs, as well as the other purported class members, were injured in the same accident as Cruz, and received treatment pursuant to plans administered by Blue Cross Blue Shield of Illinois, but apparently were not enrolled in FEHBA plans.

2

the set-off offered by defendant is insufficient and violates Illinois' common fund doctrine. Defendant responds by arguing that it is entitled under the terms of the Plan to a full reimbursement of any benefits paid under the Plan, without a set-off for fees or costs, in the event that an enrollee recovers from a third party. Plaintiffs filed suit in state court. Plaintiffs' amended state court complaint alleged that defendant's refusal to provide a full set-off violates the Illinois common fund doctrine, and that by refusing to follow the dictates of that doctrine, defendant also violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

## Analysis

Defendant HCSC may remove this case to this court only if the federal district courts would have original jurisdiction over the action. *See* 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Defendant does not contend that diversity jurisdiction exists. Thus, removal is appropriate only if the court has federal question jurisdiction over the suit.

The general rule is that a plaintiff is the master of his own complaint and can avoid federal question jurisdiction by pleading exclusively state law claims. *See Caterpillar*, 482 U.S. at 392; *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000). Defendant argues that two exceptions to the well-pleaded complaint rule apply in this case, making removal appropriate despite the fact that plaintiff's complaint alleges only state law claims.

### *Complete Preemption*

One recognized exception to the well-pleaded complaint rule is the "complete preemption" doctrine. This doctrine applies where "Congress has so completely preempted a particular area that no room remains for any state regulation and the complaint would be 'necessarily federal in

character.'" *Bastien*, 205 F.3d at 986 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). Where this is the case, removal to federal court is proper. *See id.* Complete preemption is to be distinguished from "ordinary preemption" (or "partial preemption") in which a federal law and a state law conflict, but Congress has not clearly indicated that it intends to completely preempt the particular area. In the typical ordinary preemption case, a defendant would raise a federal law as a defense to plaintiff's state law claim. In these circumstances, the Supreme Court has clearly stated that federal question jurisdiction does not exist under the well-pleaded complaint rule, making removal improper. *See Caterpillar*, 482 U.S. at 393; *Metropolitan Life*, 481 U.S. at 63. Complete preemption, by contrast, is not only a defense, but also provides a basis for federal jurisdiction, making removal proper.

Determining whether a field is completely preempted has been described as a two-part inquiry. First, Congress must have clearly manifested an intent to preempt the field. Second, the court must also find that the plaintiffs' claims fit within the "civil enforcement provisions" provided by the federal statute. *Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 311 (3d Cir. 1994) (relying on a comparison of *Metropolitan Life* and *Franchise Tax Bd.*); *see also Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 967 (7th Cir. 2000) (in ERISA case, plaintiff's claims are completely preempted only if they fall within the scope of an ERISA provision that plaintiff can enforce). In this case, the court finds that Congress has clearly manifested an intent that FEHBA completely preempt certain state law causes of action in the area of federal employee benefit plans. The court, however, concludes that the civil enforcement provisions of the FEHBA do not protect the same interests that plaintiffs seek to vindicate through their state law claims.

To date, the Supreme Court has found two federal laws that completely preempt certain state

causes of action: the Labor Management Relations Act (LMRA), and the Employee Retirement Income Security Act (ERISA). Prior to 1998, most lower courts addressing the issue determined that the FEHBA did not completely preempt state law in the area of health benefits for federal employees. *See Ramirez v. Humana, Inc.*, 119 F. Supp. 2d 1307, 1310 (M.D. Fla. 2000) (providing examples). Since Congress amended the FEHBA in 1998, however, the majority of courts addressing the issue have concluded that Congress has now clearly manifested an intent to preempt state law regarding the FEHBA plans.

Prior to 1998, the preemption provision of FEHBA read:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

*Goepel*, 36 F.3d at 312 (quoting pre-1998 language and finding that it did not completely preempt state law). The courts concluding, prior to 1998, that the FEHBA did not completely preempt state law frequently relied on the last, limiting phrase of this provision: "to the extent that such law or regulation is inconsistent with such contractual provisions." These courts often compared this restrictive language to the broader preemptive provisions of ERISA. *See, e.g., Goepel*, 36 F.3d at 312-13 & n.7; *Cyr v. Kaiser Foundation Health Plan of Texas*, 12 F. Supp. 2d 556, 567-68 (N.D. Tex. 1998); *Arnold v. Blue Cross & Blue Shield of Texas, Inc.*, 973 F. Supp. 726, 732 (S.D. Tex. 1997); *see also Sarkis v. Heimburger*, 933 F. Supp. 828, 831 (E.D. Mo. 1996); *Lambert v. Mail Handlers Benefit Plan*, 886 F. Supp. 830, 835-36 (M.D. Ala. 1995).

In 1998, however, Congress broadened the preemption provision, which now reads:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The House Report sheds some light on the purpose of the 1998 amendment:

> [The amendment was meant] to broaden the preemption of State and local laws with respect to health care contracts under the FEHB program. This amendment confirms the intent of Congress (1) that FEHB program contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) completely displace State or local law relating to health insurance or plans and (2) that this preemption authority applies to FEHB program plan contract terms which relate to the provision or benefits or coverage, including managed care programs.

H.R. Rep. No. 105-374, at 16 (1997); *see also Rievley v. Blue Cross Blue Shield of Tennessee*, 69 F. Supp. 2d 1028, 1034 (E.D. Tenn. 1999); *Ramirez*, 119 F. Supp. 2d at 1312-13.

Lower courts have split on whether the amendment demonstrates Congress' clear intent to create complete preemption. Considering Congress' deletion of the language that courts had relied on to distinguish FEHBA from ERISA, combined with the legislative history, the *Rievley* court held "that Congress has demonstrated a clear intent that FEHBA completely preempt state law in the area of federal employee health insurance plans." *Rievley*, 69 F. Supp. 2d at 1034; *see also Kight v. Kaiser Foundation Health Plan of the Mid-Atlantic States*, 34 F. Supp. 2d 334, 339 (E.D. Va. 1999) (reaching the same conclusion). The *Ramirez* court reached the opposite conclusion. In *Ramirez*, the court found that the deleted language, along with the legislative history, indicated that Congress intended to broaden the preemptive effect of FEHBA, but it concluded that Congress was "concerned with ordinary preemption rather than complete preemption." *Ramirez*, 119 F. Supp. 2d at 1313. The *Ramirez* court noted that the civil enforcement provisions of FEHBA were more

6

limited than those of the LMRA or ERISA, because the FEHBA provides federal courts with jurisdiction only over claims brought against the United States (not private defendants). *Id.* at 1312. The court also considered what was not mentioned in the legislative history -- namely, the words "complete preemption," or any analogy to ERISA or LMRA, or any reference to federal question jurisdiction. *Id.* at 1313.

Although it is a difficult question, this court concludes that the *Rievley* and *Kight* cases represent the better view with respect to Congressional intent. Congress certainly could have more clearly announced its intention to create complete preemption by analogizing to one of the few examples of complete preemption, such as ERISA or LMRA. Congress could also have used the exact words "complete preemption." Nonetheless, the court finds that the language of the House Report is sufficiently clear to demonstrate an intent to create complete preemption. The *Ramirez* court, in deciding to the contrary, did not specifically consider the meaning of the words "completely displace State or local law" in the House Report. This phrase suggests that Congress was attempting to create complete preemption, rather than just broaden FEHBA's ordinary preemption powers. *See Kight*, 34 F. Supp. 2d at 339 (attaching significance to the words "completely displace"). The words "completely displace" suggest that Congress did intend to "cross [the] qualitative boundary" between ordinary and complete preemption. *Cf. Ramirez*, 119 F. Supp. 2d at 1313. Moreover, the fact that the language deleted was the exact language frequently used by pre-1998 courts to distinguish ERISA and LMRA suggests that Congress might have been reacting to those cases. In light of the amendment and the legislative history, the court finds it sufficiently clear that Congress intended for the terms of FEHBA plan contracts to completely preempt certain state law causes of action relating to health insurance or plans. Thus, the first part of the two-part

7

test for complete preemption is satisfied.

The second part of the complete preemption inquiry is whether the plaintiffs' claims fit within the civil enforcement provisions provided by the federal statute. In this case, the court concludes that they do not. Unlike the typical case addressing FEHBA preemption, this case does not involve a plaintiff complaining that a carrier wrongfully denied him benefits. Such claims are generally based on state contract law, or on theories which are essentially re-casting state contract claims into fraud or similar claims. Instead, this case involves a plaintiff suing under Illinois' common law "common fund" doctrine, alleging that the provisions of the Plan violate that separate state law. In essence, the plaintiff is implicitly admitting that the Plan does not require a full set-off for attorney's fees and related costs, but arguing that it *should* require such a set-off, because a failure to do so violates Illinois law. In this respect, the case at bar is similar to *Arnold v. Blue Cross & Blue Shield of Texas*, 973 F. Supp. 726, 733 (S.D. Tex. 1997). In *Arnold*, the plaintiff implicitly admitted that a certain medical condition was not covered under the applicable FEHBA plan, but alleged that a Texas statute required the plan to cover such condition. The court held that "OPM's authority to require [defendant] to pay whatever claims OPM determines [defendant] to be *contractually* obligated to pay does not protect nor replace the same interests as Plaintiff's state law causes of action." *Id.* at 733. Here, as in *Arnold*, the civil enforcement mechanism provided by FEHBA, which allows enrollees to challenge the denial of benefits or coverage under the plans, does not protect plaintiff's state law claims, which are independent of any rights plaintiff has under the terms of the Plan or the FEHBA. Neither OPM's authority to enforce the plans, nor the right to bring a federal action to challenge an OPM determination, does anything to protect plaintiffs' right to challenge the validity of the Plan under an independent state law. Thus, the second part of the

8

complete preemption test is not satisfied, and the court concludes that plaintiff's claims in this case are not completely preempted.[2]

It is important to note that this observation does not mean that FEHBA Plans will necessarily be subject to regulation by the various laws of all of the fifty states, destroying the intended uniformity of federal employee health benefit plans. To the contrary, the defendant will still be able to raise ordinary preemption as a defense to plaintiff's claims in state court. State courts are perfectly competent to evaluate federal preemption defenses. *See Goepel*, 36 F.3d at 316; *Arnold*, 973 F. Supp. at 737. Absent complete preemption, "'[state courts] must be permitted to perform that function' with regard to state law claims brought before them." *Goepel*, 36 F.3d at 316 (quoting *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988)).

*Federal Common Law*

Defendant argues that, even if FEHBA does not completely preempt plaintiff's claims, a second exception to the well-pleaded complaint rule applies. This second exception is based on the

---

[2] It should be noted that the Seventh Circuit has addressed the complete preemption of the Illinois common fund doctrine in the ERISA context. *See Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997). In *Blackburn*, the court held that, under the circumstances there presented, ERISA did not preempt plaintiff's claims for a set-off of attorney's fees under the common fund doctrine. *Blackburn* provides little guidance in this case, however, because of a crucial distinction in the language of the Plan at issue here. In *Blackburn*, the plan did not contain an express requirement that participants pay their own legal fees and remit the gross, rather than the net, proceeds from any recovery. *See id.* at 496. Thus, the terms of the plan were not squarely in conflict with the common fund doctrine. The *Blackburn* court noted that a defendant would have a better argument for preemption where such a requirement existed, but left that question open, stating, "there will be time to cross that bridge when we come to it." *Id.* In this case, the Plan expressly requires that "[a]ll recoveries from a third party . . . must be used to reimburse [the Plan] for benefits paid," and that "[a]ny reduction of [the Plan's] claim for payment of attorney's fees or costs associated with the claim is subject to prior approval by [the Plan]." (2000 Statement of Benefits, Exh. F. to Notice of Removal, at 45-46). Thus, the present case raises the specific issue reserved in *Blackburn*.

Supreme Court's decision in *Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988), and the Fourth Circuit's decision in *Caudill v. Blue Cross and Blue Shield of North Carolina*, 999 F.2d 74 (1993). In *Boyle*, the Supreme Court stated that some areas involving "uniquely federal interests" may be so important to the federal government that a "federal common law" governing those areas will supplant state law either partially or entirely. *Boyle*, 487 U.S. at 504. The *Caudill* court later expanded on *Boyle*, finding removal jurisdiction appropriate in cases where federal common law applies and displaces state law. *Caudill*, 999 F.2d at 77. Since *Boyle*, courts have used a two-part test to determine whether federal common law applies. First, the matter must involve a "uniquely federal interest." *Caudill*, 999 F.2d at 78. Second, "a significant conflict must exist between the federal interest or policy and the effect of the state law, or the application of state law [must] frustrate specific policy objectives of federal legislation." *Id.* (internal quotation marks omitted) (alteration in original).

In *Caudill*, the court found that a dispute concerning benefits coverage under FEHBA plan met both parts of the two-part test. The court held that removal to federal court was appropriate, relying heavily on a comparison to the facts in *Boyle*. *Id.* at 78-79. But *Caudill* has been roundly criticized as an inappropriate extension of the holding in *Boyle*. *See Goepel*, 36 F.3d at 313-15; *Arnold*, 973 F. Supp. at 736-37; *Reveal v. Stinson*, 115 F. Supp. 2d 688, 691 n.3 (S.D. W.Va. 2000); *see also Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 924 F. Supp. 67, 71 n.4 (W.D. Tex. 1996) (summarily refusing to follow *Caudill* and permit removal in the absence of complete preemption). The critical point these cases make is that the *Boyle* case was originally brought in federal court based on diversity jurisdiction, and that *Boyle* did not deal with the issue of removal jurisdiction. As the *Goepel* court put it, "*Boyle* merely deals with a federal defense to a

state claim and is therefore a[n ordinary] preemption rather than a complete preemption case." *Goepel*, 36 F.3d at 314. By drawing from *Boyle* a new exception to the well-pleaded complaint rule, the *Goepel* court argued, *Caudill* erroneously expanded the holding of *Boyle*. *Id.* at 314-15.

Defendant argues that, despite the criticism *Caudill* has received, it represents an approach adopted by the Seventh Circuit in *Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7th Cir. 1998). The court disagrees. *Cahnmann* involved a plaintiff who brought state law breach of contract claims against a long-distance telephone carrier. The court found that removal was appropriate because the Federal Communications Act extinguished any state law contract rights that a customer would have. In *Cahnmann*, the court did not cite to *Caudill* or *Boyle*. More importantly, the court apparently found that the state law claims purportedly brought by plaintiff were completely preempted by the Communications Act. *See Cahnmann*, 133 F.3d at 489 (stating that in the situation presented there, "[f]ederal law does not merely create a right; it occupies the whole field, displacing state law," and citing *Metropolitan Life* and *Franchise Tax Bd.*, two Supreme Court cases dealing with the issue of complete preemption). Thus, the court is not persuaded that the Seventh Circuit has adopted *Caudill*'s "new" exception to the well-pleaded complaint rule.[3]

Moreover, even if federal common law displaced state contract law (or state fraud law, where contract claims are re-cast in terms of fraud claims) in questions involving the interpretation of FEHBA plans, it does not necessarily displace the state laws that plaintiffs assert here. Here, unlike in *Caudill*, the plaintiffs are implicitly admitting that the terms of the Plan do not require a

---

[3] Defendant also cites *Harris v. Mutual of Omaha Companies*, 992 F.2d 706 (7th Cir. 1993) for the proposition that the Seventh Circuit has instructed that federal law should apply to claims involving FEHBA plans. However, *Harris*, like *Boyle*, was originally brought in federal court and did not address the question of whether removal from state court would be appropriate. Thus, *Harris* does not indicate that the Seventh Circuit has taken the same logical leap that the *Caudill* court made.

11

full set-off for attorney's fees and related costs. The plaintiffs assert, however, that these terms violate Illinois' common fund doctrine. Although federal common law may extinguish ordinary state contract law, the plaintiffs' claims here would not turn on that federal common law. Rather, federal law serves only as a potential defense to plaintiffs' state law "common fund" claims.

This court respectfully declines to adopt the reasoning of *Caudill*, and, hence, refuses to permit removal where plaintiffs' well-pleaded claims do not arise under federal law, and where they are not completely preempted by federal law. In a case, such as this one, where federal law might provide a defense to plaintiffs' state law claims but does not completely preempt them, state courts are competent to apply the ordinary preemption defense and should be allowed to do so.

### *"Artful Pleading" and Plaintiffs' Motion to Strike*

The parties engage in a debate about whether the defendants raised a third exception to the well-pleaded complaint rule, called the "artful pleading" doctrine, in their surreply. Plaintiffs move to strike the surreply, to the extent it advances this new "third argument" (with complete preemption and the *Caudill* federal common law doctrine constituting the first two arguments). (Pl.'s Surresponse & Mtn. to Strike at 14). Plaintiffs complain that defendant's citation of *Cahnmann* in its surreply was an attempt to smuggle in the "artful pleading" exception, despite not having raised the exception in its Notice of Removal or its Response to Plaintiffs' Motion to Remand. It is not entirely clear how different the "artful pleading" doctrine is from the complete preemption exception, but to the extent that they are different, the court concludes that defendant was not raising a separate "artful pleading" argument. Rather, the defendant was attempting to argue that *Cahnmann* represents the Seventh Circuit's adoption of the *Caudill* federal common law exception, an argument that the court rejected above. Plaintiff's motion to strike the surreply is denied.

*Certification for Appeal*

Defendant's final argument is that if the court is inclined to remand this case because it disagrees with the *Caudill* holding, it should instead deny the motion to remand and certify the issue to the Seventh Circuit. Defendant argues that there are at least weighty arguments in favor of the *Caudill* holding, and that the issue is an important one which has divided the Fourth and Third Circuits, and should be addressed directly by the Seventh Circuit. Because remand orders are generally unreviewable, the defendant argues that an order by this court remanding the case will essentially be the law of the Seventh Circuit. If other district courts remand similar cases, relying on this opinion, then the Seventh Circuit will effectively be precluded from facing the issue.

Again, the court is not persuaded by defendant's arguments. Initially, the court notes that remand orders are generally unreviewable for a good reason: to prevent delay of the state court proceedings on the merits while a federal appeal is pending to resolve jurisdictional questions. *See, e.g., Chandler v. O'Bryan*, 445 F.2d 1045, 1057 (10th Cir. 1971). Denying a motion to remand where the court finds remand is otherwise appropriate, in order to permit the Seventh Circuit to address a federal jurisdictional issue would thwart that policy. Further, although this decision may be viewed as persuasive authority for other district courts in the Seventh Circuit, it is not binding on them. Other district courts may choose to follow the reasoning of this opinion, but it by no means binds them as the law of the Circuit to remand similar cases. Finally, the court reminds defendant of the unique nature of this case. Unlike the typical challenge to a denial of FEHBA plan benefits, the plaintiffs here are not asserting state law breach of contract claims (or contract claims re-cast as fraud claims). Rather, the plaintiffs are invoking a separate state law doctrine. In this respect, another district court may find this case readily distinguishable and opt to deny a plaintiff's motion

13

for remand, perhaps offering the Seventh Circuit an opportunity to choose to follow either *Caudill* or *Goepel*.

### *Attorney's Fees and Costs*

The federal statute governing procedure after removal states, in part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Plaintiffs ask this court to award them fees and costs associated with litigating the remand motion. The court declines to award fees or costs in this case, because the defendant's attempt to remove the case raised complex jurisdictional questions involving issues of law that remain unsettled in the Seventh Circuit. It is clear to this court that the defendant's attempt to remove was not made in bad faith. Although bad faith is not a prerequisite to an award of fees under § 1447(c), the court concludes that a fee award would be unjustified in the circumstances presented here. *See generally American Inmate Phone Systs., Inc. v. U.S. Sprint Communications Co.*, 787 F. Supp. 852, 859 (N.D. Ill. 1992) (refusing to award fees or costs where the case presented complex issues, the defendant raised a substantial jurisdictional question, and there was no indication that the defendant acted in bad faith).

### Conclusion

For the foregoing reasons, plaintiffs' motion to strike is denied, plaintiffs' motion to remand is granted, and plaintiffs' motion to reassign and consolidate this case is denied as moot.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: June 1, 2001